JOHN J. O'DONNELL, Appellant, v. UNEMPLOYMENT COMPENSATION COMMISSION, Appellee.

(*January* 5, 1961.)

TERRY, P. J., sitting.

*Joseph Donald Craven* for appellant.

*Joseph A. L. Errigo* for appellee.

Superior Court for New Castle County, No. 474, Civil Action, 1959.

TERRY, P. J.:

This case arises by way of an appeal from an amended decision of the Unemployment Compensation Commission (Appeal Docket No. 9048-A). Such an appeal is made pursuant to the provisions of Title 19, *Delaware Code,* Section 3323, by Section 2 thereof:

"* * * The findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law."

The Commission has made a finding of the following facts; the appellant is a union electrician who has resided in the Wilmington area since 1947. Formerly, he lived in New York City, where he acquired membership in Local Number 3 International Brotherhood of Electrical Workers. He has retained his New York membership and has never become a

member of Wilmington Local Number 313 I.B.E.W. It is the practice of the I.B.E.W. to permit a paid up member of any one of its various Locals to work-out of any other I.B. E.W. Local throughout the Nation. Under this policy the appellant had found no difficulty in getting employment through the Wilmington Local.

However, the Commission also found that the above noted union policy is complemented by a companion practice. This latter practice was found to be pursuant to an intra-union regulation which provided that the Union Local for a particular area (in this case Local 313, I.B.E.W. for Wilmington area) could require a union member from another Local (in this case the appellant from Local Number 3, I.B.E.W. New York City) who had been working out of its Union Hall, to surrender his employment, if such should be necessary, in order to provide a job for one of the members of the host Local (No. 313) who happened to be unemployed at that time.

These two union practices are quite relevant, since the Commission found that on September 19, 1958, the appellant was employed by the Light and Power Construction Co. as a union electrician working out of the Wilmington Local, and that on that date he was advised by the Local's shop steward, at the job, that he would have to surrender his position because some members of the Local were out of work and had thereby become entitled to "bump" the appellant. Because of this condition appellant quit his employment. Of this action the appellant has said, "that I have no other choice than to get off the job due to Local Union orders." He has characterized the practice as "* * * a gentleman's agreement between all local union men. When there are local men out of work, you get off the job to make room for them."

Being unemployed, the appellant applied for unemployment compensation on the theory that he had lost his employment pursuant to Article 2 Section 3 of the collective

bargaining agreement in force between Local 313 and Light and Power Construction Company. Said Section provides:

"The employer shall employ only members in good standing of the union on all electrical work; should however, the union be unable to furnish the employer with workmen within 48 hours of the time the union or its representative receives the request, the union shall issue temporary working cards to workmen who apply and are acceptable to both parties until such time as the union can furnish workmen. Any such workmen shall receive at least the minimum wages and work under the conditions of the agreement."

To bring himself under this section the appellant would read the phrase "in good standing of the union" to mean "in good standing of I.B.E.W. Local 313." This is the crux of the case, for the Commission has adopted an antithetical construction whereby it has interpreted the word "union" to mean the overall organization of the I.B.E.W. By way of amplification, the Commission ruled:

"Where the local union is unable, within 48 hours, to furnish union members in good standing with the International Brotherhood of Electrical Workers, whether they be from Wilmington Local or some other Local, the union will issue temporary working cards to non-union workers who are acceptable to both parties; provided, however, that such employees will be replaced by union workers, whether they be from the Wilmington Local or some other Local, when and if they become available."

Thus, the Commission held that Article 2 Section 3 of the Collective Bargaining Agreement had no application to the appellant's unemployment, and that he had not been bumped pursuant to its provisions. Rather, they found that he had voluntarily surrendered his job as a result of a strictly intra-union bumping agreement. They held this to be a personal reason and not a "good cause attributable to (his)

work." Therefore, he was ineligible for unemployment benefits under the provisions of Title 19, *Delaware Code*, Section 3315 (1), which provides, *inter alia*, that "an individual shall be disqualified for benefits (1) for the period of unemployment next ensuing after he has left his work voluntarily without good cause attributable to such work * * *."

In support of its opinion the Commission has relied heavily upon *Bigger v. Unemployment Compensation Commission*, 4 *Terry* 553, 53 *A.* 2d 761.

In reviewing the record in this case, I must conclude that there is evidence in the record to support the Commission's factual determination. The primary point of contention centers around the ruling that appellant was bumped because of an intra-union agreement and not because of Article 2, Section 3 of the Collective Bargaining Agreement. This ruling involved a finding of fact as to the existence of the intra-union agreement as well as an interpretation of the import of said Article 2, Section 3.

There seems to be no question but that appellant recognized the existence of the intra-union bumping agreement. The confusion arose simply because of his contention that said agreement was sanctioned by, and embraced within, the provisions of the Collective Bargaining Agreement. The record, however, discloses that the employer had not understood his contract in that light; and there is nothing in the record to show that the appellant had any personal knowledge as to either the existence or construction of Article 2, Section 3 of the Agreement.

Without setting forth a belabored factual analysis, I find upon the record that the Commission was justified in finding the existence of an intra-union bumping agreement, in determining that said agreement was not embraced within the provisions of Article 2, Section 3 of the Collective Bar-

gaining Agreement, and in construing Article 2, Section 3 in the manner above quoted.

The Commission having reached the above determination, it did not err in relying on the law as expressed in *Bigger v. Unemployment Compensation Commission, supra.* Admittedly the fact situation in *Bigger* was somewhat different than in the case at bar, nevertheless, the Court in that case dealt squarely with the issue of whether or not an intra-union agreement could afford a reason (recognizable under the Unemployment Compensation Act) by which a union member could refuse employment and still be entitled to benefits under the Act. Its reasoning relative to a refusal of employment must be said to be equally applicable to a surrender of employment, as in this case. At page 766 of 53 *A.* 2d in the *Bigger* opinion the Court said:

"* * * The question here is: Did the Legislature intend the Commission and the Court to give effect to union regulations in determining whether an individual has forfeited his right to receive benefits?

\*      \*      \*      \*      \*      \*

"* * * Nothing in the Act suggests that a union or group of employers or anyone else may add to, or subtract from, the standards laid down in the Act itself.

"* * * Membership in a union gives an individual no greater rights under the Act than he otherwise has. Likewise, a group of individuals cannot secure higher privileges merely by adopting a rule which binds themselves to a certain course of conduct. We cannot agree with a theory which would have the effect of substituting a union rule for a statutory requirement."

With this language in mind, we must refer to the applicable statutory requirement as expressed in Title 19,

*Delaware Code*, Section 3315(1) which renders appellant ineligible if he left his work "voluntarily without good cause attributable to such work." Had he left work as a result of the bumping clause in the Collective Bargaining Agreement there would seem to be no doubt that he had left because of a good cause attributable to his work, for he would have left due to a contractual provision by which he (through the Union) and his employer were legally bound. But he left as a result of a strictly intra-union bumping regulation and such, in logic, cannot be attributable to his work within the meaning of the Act and the *Bigger* construction.

The voluntariness of appellant's surrender of employment is derived from the voluntariness by which he joined the union and agreed to be bound by its internal regulations. That he may feel that he had no choice but to leave under the circumstances, cannot be taken to be determinative of involuntariness within the meaning of the Act as construed. His reason was a personal one, attributable to the voluntary acceptance of a union regulation; it was not a good cause attributable to his work. Therefore, he is rendered ineligible for benefits by the provisions of Title 19, *Del. Code*, Section 3315(1).

The decision of the Commission must be affirmed in all respects.

An order will be entered upon motion.