[No. 43600.    En Banc.    September 18, 1975.]

NORMA J. MATISON et al, Respondents, v. R. W. HUTT, Appellant.

*Slade Gorton, Attorney General,* and *Gerald D. Kelly* and *Joseph M. Littlemore, Assistants,* for appellant.

*Griffin & Enslow,* by *Robert G. Griffin* and *David B. Condon,* for respondents.

BRACHTENBACH, J.—This case presents the issue of whether an employee who elects to terminate employment rather than lose valuable union benefits can be eligible for

unemployment compensation. The trial court determined that such a reason for termination is for "good cause" within the meaning of RCW 50.20.050. We affirm.

The two plaintiffs, members of a union, were employed at a motel restaurant. Pursuant to a decertification election, the union ceased to be the exclusive bargaining agent for the restaurant employees, and plaintiffs quit their jobs. Plaintiffs sought unemployment compensation, but the commissioner of the Employment Security Department denied both claims. Upon appeal of that decision to superior court, the commissioner's decision was reversed and benefits allowed.

RCW 50.20.050 denies unemployment compensation to individuals who leave work voluntarily without good cause.[1] A "good cause" condition reflects the concept common to the unemployment compensation statutes of various states that benefits are to be available to those unemployed through no fault of their own. 17 Vill. L. Rev. 635 (1972); W. Haber and M. Murray, *Unemployment Insurance in the American Economy* 299 (1966). However, there is substantial variance among the states as to what constitutes "good cause." Some state laws require that good cause for leaving must be one attributable to circumstances and conditions of the job itself, *e.g.*, Arizona Revised Statutes § 23-775; Michigan Statutes § 17.531. Other statutes, like our own, simply require that termination must be for good cause, and this court has held that good cause may include compelling *personal* reasons. *In re Bale*, 63 Wn.2d 83, 385 P.2d 545 (1963). The legislature has acquiesced in our interpretation for more than a decade.

The reasons which plaintiffs gave for terminating their employment were related to their status as union employ-

---

[1] "An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he has left work voluntarily without good cause and thereafter until he has obtained work and earned wages of not less than his suspended weekly benefit amount in each of five calendar weeks: *Provided,* That disqualification under this section shall not extend beyond the tenth calendar week following the week in which such individual left work." RCW 50.20.050.

ees. Their health, welfare and pension benefits were jeopardized after the decertification election because a nonunion employer cannot contribute to the health and welfare trust. An unemployed member of the union can pay the necessary contributions to continue coverage, but members employed in a nonunion house cannot. Thus, had plaintiffs continued to work in the restaurant after the decertification the benefits would have been lost. Furthermore, the union might have taken disciplinary action against plaintiffs had they continued their employment with a nonunion house.

Leaving employment voluntarily for union related reasons has brought the issue of "good cause" before a number of courts. The department cites various authorities which hold that such union related reasons do not constitute good cause for termination of employment, but none of the cited cases was decided within the context of an eligibility standard so broad as that enunciated in *In re Bale, supra.* For example, in *Douton v. Administrator*, 28 Conn. Supp. 394, 263 A.2d 705 (Super. Ct. 1970), *Lemelin v. Administrator*, 27 Conn. Supp. 446, 242 A.2d 786 (Super. Ct. 1968), and *O'Donnell v. Unemployment Compensation Comm'n*, 53 Del. 162, 166 A.2d 720 (1961), the courts noted that *personal* reasons not connected with employment cannot constitute good cause for termination of employment under the statutes involved. These cases, and others such as those collected in *Termination of employment as a result of union action or pursuant to union contract as "voluntary" for purposes of unemployment compensation benefits*, Annot., 90 A.L.R.2d 835 (1963), and *Right to unemployment compensation of claimant who refuses nonunion employment*, Annot., 56 A.L.R.2d 1015 (1957), are simply not helpful in determining whether plaintiffs' union related reasons for terminating their employment satisfy the good cause requirement of RCW 50.20.050 as interpreted in *In re Bale, supra.*

As stated in *Saulls v. Employment Security Agency*, 85 Idaho 212, 219, 377 P.2d 789 (1963), "'Good

cause' . . . is not susceptible of an exact definition. Rather, the meaning of these words must be determined in each case from the facts of that case." Here we have a situation where a waitress and a pantry worker were entitled to health and welfare coverage so long as they were employed by a union house. We have pointed out above the jeopardy to their health and welfare benefits, but equally compelling is the potential loss of their pension benefits. At the time they quit their jobs, plaintiffs needed additional time under a union contract to have their pension rights vest. One plaintiff needed only 1 year of coverage to have her rights vest; without that she could have lost 14 years of credit in the pension plan.

The department contends that plaintiffs' reasons for quitting were "neither compelling nor reasonable and must be considered to be purely personal." The department's argument ignores the reality of a working person's life. People earning rather minimum wages are especially dependent upon current health and welfare coverage and potential pension benefits. That those benefits arose from voluntary membership in a union does not diminish their real and substantial impact upon and importance to these plaintiffs.

We recognize the need for uniformity in the administration of unemployment compensation law, and a great deal of uniformity could be achieved by denying benefits where the claimant's personal reasons for terminating employment are union related. Such inflexibility would be unreasonable, however. If an employee faces a substantial personal hardship in continuing his or her employment, the employee is eligible for unemployment compensation benefits in light of *In re Bale, supra.* To make a distinction based upon the fact that the employee's personal hardship results from union related difficulties rather than other kinds of personal difficulties would be illogical. Such a result could lead to the anomaly that a union employee, facing a substantial financial loss if he or she continues employment, would be denied unemployment compensation

whereas a nonunion employee, faced with the same amount of financial loss though not of union benefits, would be entitled to unemployment compensation.

In view of our holding we do not reach the question of whether the possibility of union discipline for continuing employment with a nonunion employer would constitute good cause under the statute.

The trial court is affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and HOROWITZ, JJ., concur.