[No. 50496–2. En Banc. August 23, 1984.]

SAFECO INSURANCE COMPANIES, *Appellant*, v. CAROLYN G. MEYERING, ET AL, *Respondents*.

*Perkins, Coie, Stone, Olsen & Williams,* by *John F. Aslin* and *Russell L. Perisho,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Margaret A. Gaffney, Assistant,* for respondents.

BRACHTENBACH, J.—The appellant/employer, Safeco Insurance Companies (Safeco), appeals the administrative determination by the respondent, the Department of Employment Security, awarding unemployment benefits to the employee/claimant Carolyn G. Meyering. The trial court affirmed the Commissioner's decision; we reverse.

On September 10, 1980, Meyering, an employee of Safeco, submitted her letter of resignation to her supervisors, informing them that she was quitting and giving them 2 weeks' notice. Her reason for tendering her resignation was that she had become very frustrated with her job after her job duties were changed to include policy amendments. The change required personal training and Meyering felt that she could not take instructions from her assigned trainer because he didn't know what he was doing and, despite her complaints, management refused to remedy the

problem.

That same afternoon Safeco informed Meyering that she would not have to work through the 2–week notice period but that she would receive her pay for the 2 weeks. Safeco made this decision because Meyering was unhappy in her job, her trainer was uncomfortable with her, and this made the atmosphere in the office tense. Additionally, however, Safeco was happy with Meyering's work, had no intention of letting her go and only let Meyering go because she tendered her resignation.

After Meyering left Safeco's employ, she applied for, and was awarded, unemployment compensation by the Department because although she intended to "voluntarily quit" she had actually been "discharged" by Safeco. Safeco appealed this decision to the Department's appeal tribunal, arguing that Meyering had not been discharged but had voluntarily quit.

After a hearing, the examiner concluded as a matter of law that Meyering had been discharged. The examiner stated that the Commissioner, relying on In re William E. F. Powell, King County cause 470877 (Feb. 14, 1955),

> has long held that when an individual gives notice of an intent to quit in the future and that separation date is accelerated by the employer, the separation becomes a discharge and is adjudicated under the provisions of RCW 50.20.060. *See In re Wilson,* Comm. Dec. 839 (1970).

Conclusion of law 1.

Applying the provisions of RCW 50.20.060, the examiner concluded that Meyering was not discharged for misconduct, and therefore, was not disqualified from receiving benefits.

However, the examiner went on to state:

> 5. The Tribunal is of the opinion that it makes neither legal nor common sense to blindly follow the *Powell* case, *supra,* a Superior Court Decision which states no reasoning to support its conclusions. . . . We feel that the better approach would be to look at the entire situation which led to the claimant's separation from employment.

Did the claimant acquiesce to leaving the employment sooner; was the claimant paid the amount he/she would have earned had he/she been allowed to work through the notice period; would the claimant have been separated by the employer, had she/her [sic] not given notice of his/her intent to quit? Why was the claimant not allowed to work through the notice period? Did the employer's action actually change the basic reason for separation? What was the primary cause of the claimant's separation from employment? Would the claimant have been disqualified for receiving benefit[s] had he/she worked through the notice period?

6. In this case, we believe that the primary reason for the claimant's separation from her employment was her decision to voluntarily leave her employment. If we look beyond the *Powell* case, *supra,* we would apply the provisions of RCW 50.20.050.

The examiner concluded that "[i]f . . . [she] could apply the provisions of RCW 50.20.050, . . . [she] would conclude that . . . [Meyering] did not have good cause for leaving her position" and, therefore, would not be eligible for benefits. Nonetheless, the examiner sustained the Department's award of benefits because she was constrained by the Commissioner's prior determinations.

Safeco appealed this determination to the Commissioner of the Department of Employment Security. The Commissioner, through his delegate, affirmed the decision of the appeal tribunal that Meyering's separation was a discharge and thus properly analyzed under RCW 50.20.060, explicitly adopting only the appeal tribunal's findings of fact, and portions of the conclusions of law. The Commissioner, however, did not address the appeal examiner's conclusions concerning the applicability of RCW 50.20.050. The Commissioner's decision was affirmed by the King County Superior Court. The Court of Appeals certified the case to this court, and we accepted review.

The Employment Security Act, RCW Title 50, sets aside unemployment reserves to be used for the benefit of persons unemployed through no fault of their own. RCW 50.01.010. In general, to accomplish this end, the act pro-

vides for the payment of unemployment benefits to unemployed individuals unless a claimant is disqualified from receiving such benefits. Two qualification provisions, RCW 50.20.050 and RCW 50.20.060, are at issue in this case. Each section dictates whether an individual claimant is or is not disqualified from receiving benefits in a given case. However, both sections will not apply to the same set of facts.

RCW 50.20.050(1) states that an individual is disqualified from receiving benefits if he or she left work voluntarily without good cause. Thus, if a worker "voluntarily quits" her job, she will be denied benefits unless she has "good cause" for quitting. RCW 50.20.060(1) states that an individual is disqualified from receiving benefits if he or she is discharged for misconduct. Thus, if a person is "discharged" by her employer, she will be eligible for benefits unless she was terminated for "misconduct". A fortiori, how the job separation is initially characterized, either voluntary quit or discharge, will trigger which statutory section, and, which analytical inquiry, will appropriately apply to the facts at issue.

The Commissioner determined that this factual situation amounted to a discharge by Safeco and, therefore, RCW 50.20.060 applied. Conversely, Safeco argues that Meyering voluntarily quit and, therefore, RCW 50.20.050 is the proper section to apply to these facts.

This case is governed by the administrative procedure act and more specifically, RCW 34.04.130(6) which reads:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as

submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

The Department argues that its conclusion that Meyering was "discharged" by Safeco is a conclusion of fact and, therefore, reviewable under the clearly erroneous standard of RCW 34.04.130(6)(e). *See Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

■■ We do not agree. The Commissioner's determination is a conclusion of law and, thus, reviewable under the "error of law" standard of RCW 34.04.130(6)(d). *See generally* Jaffe, *Judicial Review: Question of Law,* 69 Harv. L. Rev. 239 (1955). This standard calls for "de novo" judicial review of the administrative decisions and allows the reviewing court to essentially substitute its judgment for that of the administrative determination, though substantial weight is accorded the agency's view. *Franklin Cy.,* at 325.

Initially, there are no factual issues in this case as neither party appealed the tribunal's findings of fact. The determination that these established facts amount to a discharge is a conclusion of law because that conclusion determines the legal rights of the parties insofar as which statutory provision applies to the factual situation at issue; RCW 50.20.060 as opposed to RCW 50.20.050. Thus, the Commissioner's determination that these established facts amount to a "discharge" is not independent of or anterior to any assertion as to its legal effect. *Leschi Imp. Coun. v. State Hwy. Comm'n,* 84 Wn.2d 271, 285, 525 P.2d 774 (1974).

Moreover, in this case the principal dispute surrounds the meanings of the statutory terms "left work voluntarily", RCW 50.20.050, and "discharged", RCW 50.20.060. These terms as used in the statutory subsections are legal terms. Whether an individual case falls under one section as opposed to the other depends upon the facts of the case. After the facts are established, as they are in this case, the

ultimate conclusion is a conclusion of law. *Leschi,* at 293, *see also Rasmussen v. Department of Empl. Sec.,* 98 Wn.2d 846, 658 P.2d 1240 (1983). Thus, the error of law standard applies and the reviewing court is entitled to make a de novo review of the record independent of the agency's actions. *Rasmussen,* at 850.

The Department argues that even under the de novo review standard, this court should defer to the agency's interpretation. First, under the Employment Security Act, the Commissioner's decisions are prima facie correct. RCW 50.32.150. Where an agency is charged with administering a special field of law and endowed with quasi–judicial functions, such as the Department of Employment Security, because of the agency's expertise in that field, its construction of words should be accorded substantial weight. *Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 555, 637 P.2d 652 (1981). Additionally, the construction at issue has been consistently followed by the Department since the 1955 Superior Court decision in Powell and is in accord with the legislatively expressed policy of liberal construction. *See* RCW 50.01.010. Lastly, this court should defer to the Department's interpretation because the Legislature has amended RCW 50.20.050 and has not repudiated the Department's interpretation. Therefore, the Legislature has "silently acquiesced" in the Department's interpretation. *See State ex rel. Pirak v. Schoettler,* 45 Wn.2d 367, 372–73, 274 P.2d 852 (1954); *see also Smith v. Northern Pac. Ry.,* 7 Wn.2d 652, 664–65, 110 P.2d 851 (1941).

The Department's interpretation, while afforded substantial weight, is not conclusive, however.

We also recognize the countervailing principle that it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law. *Rusan's, Inc. v. State,* 78 Wn.2d 601, 478 P.2d 724 (1970). As stated in both *In re Juvenile Director,* 87 Wn.2d 232, 552 P.2d 163 (1976) and *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 580 P.2d 246 (1978), both history and uncontradicted authority make clear that it is

emphatically the province and duty of the judicial branch to say what the law is.

*Overton,* at 555. This court, in the past, has reached a result that is contrary to the Commissioner's position despite the existence of the legislative declaration that the Commissioner's decisions are prima facie correct. *See, e.g., Matison v. Hutt,* 85 Wn.2d 836, 539 P.2d 852 (1975). The rule announced in *Pirak,* which the Department relies on, only applies when the statute in question is ambiguous and where subsequent legislative consideration involves the same issue as that which is covered by the administrative rule. *Pringle v. State,* 77 Wn.2d 569, 573, 464 P.2d 425 (1970). Moreover, evidence of legislative acquiescence is not conclusive, but is merely one factor to consider. *Somer v. Woodhouse,* 28 Wn. App. 262, 270, 623 P.2d 1164 (1981).

Despite the weight given to the administrative determination, the paramount concern of this court is to ensure that the statute is interpreted consistently with the underlying policy of the statute. *Automobile Club v. Department of Rev.,* 27 Wn. App. 781, 786, 621 P.2d 760 (1980). We believe that the Department's interpretation is inconsistent with the policy of the act and promotes form over substance. We, therefore, do not adopt the Department's interpretation.

■ The Employment Security Act was enacted to award unemployment benefits to those unemployed through no fault of their own. RCW 50.01.010; *Matison v. Hutt, supra.* The disqualification provisions of the act are based upon the fault principle and are predicated on the individual worker's action, in a sense his or her blameworthiness. *Ancheta v. Daly,* 77 Wn.2d 255, 261, 461 P.2d 531 (1969). Thus, whether the job separation is a discharge or is voluntary, in order for a claimant to be eligible for benefits, the act requires that the reason for the unemployment be external and apart from the claimant. *Cowles Pub'g Co. v. Department of Empl. Sec.,* 15 Wn. App. 590, 593, 550 P.2d 712 (1976).

The act requires that the Department analyze the facts

of each case to determine what actually caused the employee's separation. A voluntary termination requires a showing that an employee intentionally terminated her own employment. *Vergeyle v. Department of Empl. Sec.*, 28 Wn. App. 399, 402, 623 P.2d 736 (1981). We agree with the analysis proposed by the appeal tribunal examiner. Under this analysis Meyering intentionally terminated her employment voluntarily.

Looking at the entire situation, Meyering's resignation and job separation was entirely voluntary. She unilaterally and voluntarily submitted her resignation to her supervisors, informing them she was quitting. She agreed to not work out her notice period and was paid for that 2–week period as if she had come in each day. Safeco paid her for the 2–week notice period because they felt that having Meyering work out her notice period would create a tense office environment. More importantly, Safeco had no intention of letting Meyering go and only did so because she quit. In addition, if Safeco had required Meyering to work out her notice period, even if she was given no actual work and was allowed to just sit at her desk for 8 hours each day, her job separation would have been treated as a voluntary quit.

Under these facts, the employer's action in paying Meyering for her notice period without requiring her to actually work did not change the nature of the job separation from a voluntary quit to a discharge. Meyering voluntarily quit her job effective the last day of her notice period. This conclusion is supported by the fact that the Department found her to be unemployed, for purposes of awarding benefits, on September 24, 1980, the end of her notice period. *See* RCW 50.04.310.

Our conclusion is consistent with the Department's original interpretation that these facts amount to a voluntary quit. *See In re Powell*, Empl. Sec. Comm'r Dec. 115 (1954). Decisions from other jurisdictions are also consistent with this result. *See, e.g., Guy Gannett Pub'g Co. v. Maine Empl. Sec. Comm'n*, 317 A.2d 183, 187 (Me. 1974); *Piggly*

*Wiggly Operators' Warehouse, Inc. v. State*, 292 So. 2d 257 (La. Ct. App. 1974); *Ennis v. Employment Div.*, 37 Or. App. 281, 587 P.2d 102 (1978) (dicta). The authority cited by the Department is not to the contrary. In *West Jordan v. Morrison*, 656 P.2d 445 (Utah 1982), the employer accepted the employee's resignation, terminated the employee that day, and did not pay him for the 2-week notice period. That situation is not before us.

The Department argues that our conclusion will deprive employees of their valuable right to change their mind and withdraw their resignations. The Department's position is that an employer's refusal to accept a withdrawal after the employee changes her mind is a discharge. *See In re Alef,* Empl. Sec. Comm'r Dec. 699 (1982). Assuming, without deciding the issue, that this position is consistent with the policy of the act, our result in this case is not inconsistent with that position. Even if the employee does not show up to work during her 2-week paid notice period, the employee can still change her mind and attempt to withdraw her resignation during the 2-week notice period.

In conclusion, when an employee voluntarily submits her resignation and gives notice, if the employer accepts that resignation but pays the employee for the notice period and tells the employee not to show up for the notice period, that job separation is a voluntary quit. The opposite result promotes form over substance and is inconsistent with the policy of the act that benefits be awarded to those unemployed through no fault of their own. Accordingly, when that employee applies for unemployment benefits, the facts surrounding her job separation are properly analyzed under the provisions of RCW 50.20.050. Under that section, the employee is disqualified from securing benefits unless she can show she had "good cause" for voluntarily quitting.

The appeal tribunal examiner concluded that under the facts established at the hearing, Meyering did not have "good cause" to voluntarily quit. Safeco asks this court to adopt this conclusion and hold that Meyering should be denied benefits. We believe that this matter should be

remanded to the Commissioner to give the Department the opportunity to determine if "good cause" existed in this case. *Farm Supply Distribs., Inc. v. State Utils. & Transp. Comm'n,* 83 Wn.2d 446, 452–53, 518 P.2d 1237 (1974).

The Commissioner determined that Meyering was "discharged" and analyzed the situation proceeding on an incorrect interpretation of the law basic to its decision. The Commissioner did not adopt the appeal tribunal's conclusions concerning "good cause" and presumably did not consider the issue at all. The Commissioner has statutory authority to take additional evidence pertinent to the issue of "good cause" if that is necessary. RCW 50.32.030. We believe that Meyering should be given the opportunity to argue that she voluntarily quit with "good cause", as that term is used in RCW 50.20.050.

We therefore remand this case to the Superior Court with directions that it be further remanded to the Commissioner of the Department of Employment Security for further action consistent with this opinion.

WILLIAMS, C.J., ROSELLINI, UTTER, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and HAMILTON, JJ. Pro Tem., concur.