[No. 36525-8-I.   Division One.   July 22, 1996.]

ANHEUSER BUSCH, INC., *Respondent*, v. TERRENCE J. GOEWERT, *Appellant*.

---

*William B. Knowles* and *Matthew J. Bean*, for appellant.

*Patrick M. Madden, Clemens H. Barnes*, and *Bogle & Gates, P.L.L.C.*, for respondent.

GROSSE, J. — Terrence J. Goewert appeals the trial court's reversal of the grant of unemployment benefits by the Commissioner of the Employment Security Department of the State of Washington (the commissioner) after Goewert retired because he feared his employer, Anheuser Busch, Inc. (Anheuser), would eventually lay him off. We affirm, holding that Goewert voluntarily quit because Anheuser did not announce a layoff or reduction-in-force within the meaning of applicable administrative procedures and, accordingly, Goewert is disqualified for benefits because he voluntarily left his employment without good cause.

Terrence Goewert worked for Anheuser from February 22, 1984 until December 31, 1993, when he retired. On September 23, 1993, Anheuser announced its intention to reduce the number of its salaried administrative staff by 10 percent by late 1994. At the same time, in order to facilitate achieving the 10 percent goal, Anheuser offered an enhanced early retirement program for employees aged 53 years and over. The deadline to apply for the program was November 18, 1993. If a 10 percent reduction was not achieved by late 1994 through employee participation in the retirement program, Anheuser stated that it would institute involuntary terminations in order to meet the goal.

Goewert worked as a salaried regional sales manager in Anheuser's military division. Goewert feared Anheuser would eliminate his department in response to military base closures around the country. Concerned about his future job security, Goewert repeatedly attempted to find out from Anheuser whether he would be laid off. Unable to provide any answers or reassurances, Anheuser could

not guarantee him a job before the deadline to decide about retirement. Because Goewert thought his job would be eliminated and because he would not be able to benefit from the program after November 18, 1993, he elected to retire. Goewert received a check for $197,819.28 on December 31, 1993.

By offering early retirement Anheuser successfully reduced its salaried work force by approximately 12 percent. Anheuser did not have to lay off any employees. The company dissolved its military department and merged it with its retail sales department. The commissioner found that Goewert would not have been laid off.

Actively seeking employment, Goewert sought and was granted unemployment benefits. Anheuser asked for review. The Office for Administrative Hearings determined that Goewert was eligible for benefits. The commissioner affirmed, concluding that Goewert did not voluntarily quit under WAC 192-16-070. Anheuser appealed to superior court. The court reversed, ruling RCW 50.20.050 disqualified Goewert from receiving benefits because he left work voluntarily without good cause. Goewert appeals.

Generally, unemployed workers are eligible for benefits unless they are disqualified by statute.[1] Under RCW 50.20.050(1), a worker is disqualified from receiving unemployment benefits if the commissioner determines he or she voluntarily leaves work without good cause. In making this determination:

> [T]he commissioner shall only consider work-connected factors such as the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness for the work, the individual's ability to perform the work, and such other work connected factors as the commissioner may deem pertinent, including state and national emergencies.[2]

The commissioner interprets RCW 50.20.050(3) to require

---

[1]*Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 389, 687 P.2d 195 (1984).

[2]RCW 50.20.050(3).

an employee to establish good cause by showing: (1) that the employee left because of work-connected factors; (2) that the factors were sufficiently compelling to cause a reasonably prudent person to terminate employment; and (3) that the employee exhausted all reasonable alternatives (but the employee need not perform futile acts).[3]

■ If an " 'agency has erroneously interpreted or applied the law,' " its decision may be overturned.[4] The term "left work voluntarily" as used in RCW 50.20.050 is a legal term which we may independently construe.[5] Since the only issue presented is one of law, our review is de novo.

The commissioner evaluated Goewert's claim under a commissioner's interpretative regulation, WAC 192-16--070. Under this regulation, an employee is not disqualified from unemployment benefits if the employee volunteers to be laid off after an employer announces a layoff or reduction-in-force and implements a plan to lay off specific employees. WAC 192-16-070 provides:

> A layoff or reduction-in-force will not be considered to be a voluntary quit pursuant to RCW 50.20.050, if:
>
> (1) The employer announced a layoff or reduction-in-force; and
>
> (2) The claimant volunteered to be one of the people included in the layoff or reduction-in-force; and
>
> (3) The employer determines which individuals are laid off or released through a reduction-in-force; and
>
> (4) The employer accordingly laid off or released the claimant due to a reduction-in-force.

■ Anheuser was not planning any involuntary

---

[3]WAC 192-16-009; *Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76, 80-81, 795 P.2d 1184 (1990), *review denied*, 116 Wn.2d 1005 (1991).

[4]RCW 34.05.570(3)(d); *Fisher v. Employment Sec. Dep't*, 63 Wn. App. 770, 773, 822 P.2d 791 (1992).

[5]*Safeco Ins. Cos. v. Meyering*, 102 Wn.2d at 390; *Read v. Employment Sec. Dep't*, 62 Wn. App. 227, 233, 813 P.2d 1262 (1991).

layoffs until the end of 1994 and Goewert retired in December of 1993. It is undisputed that Anheuser did not lay off any employee.[6] Furthermore, Anheuser did not compel any employee to accept early retirement. Because Anheuser did not announce that it was laying off employees or reducing its work force by terminating employees, WAC 192-16-070 does not apply in this case. The commissioner erroneously interpreted the phrase "reduction-in-force" to include all situations in which an employer reduces the number of its employees, not the "involuntary" situations required under RCW 50.20.050. The employer must announce that it is instituting a layoff or a reduction-in-force, meaning involuntarily terminations of employment. To hold otherwise would contravene the purpose of the Employment Security Act of providing a source of income to those workers who are unemployed through "no fault of their own" and its purpose of reducing "involuntary unemployment."[7] "Despite the weight given to the administrative determination, the paramount concern of this court is to ensure that the statute is interpreted consistently with the underlying policy of the statute."[8]

WAC 192-16-070 is apparently modeled after a Massachusetts case, *Morillo v. Director of Div. of Empl. Sec.*, distinguished in *Read v. Employment Sec. Dep't.*[9] In *Read*, three employees accepted early retirement and left the Tacoma News after the company announced that 25 employees would be laid off. The *Read* court held that they left voluntarily in exchange for early retirement benefits. In justifying their decision to retire, the claimants in *Read* relied on *Morillo*. In *Morillo*, the employer had taken "the

---

[6]This finding is unchallenged and is a verity on appeal. *Forsman v. Employment Sec. Dep't*, 59 Wn. App. at 79.

[7]*Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 315-16, 752 P.2d 372 (1988) (quoting RCW 50.01.010). *See Read v. Employment Sec. Dep't*, 62 Wn. App. at 233 ("' '[T]he act requires that the reason for the unemployment be external and apart from the claimant.' ") (citation omitted).

[8]*See Safeco Ins. Cos. v. Meyering*, 102 Wn.2d at 392.

[9]62 Wn. App. at 234-35 (discussing *Morillo v. Director of Div. of Empl. Sec.*, 394 Mass. 765, 477 N.E.2d 412, 412-13 (1985)).

first and last step" in bringing about the workers' unemployment by announcing its intention to lay off 12 people and by later accepting the worker's offer to be one of the employees to be laid off. Morillo could have continued working but the employer accepted his offer to be laid off since it was laying off employees anyway. This did not preclude Morillo from receiving benefits. The *Read* court rejected the application of *Morillo* because the employer did not announce any layoffs, only a retirement program, and because the employees' unsubstantiated fears that they would be laid off did not support a conclusion that the employer would lay them off.[10] The court did not expressly adopt the reasoning of *Morillo*.

Here the employer did not announce a layoff or reduction-in-force, accordingly, we need not consider whether the commissioner was within its authority to enact WAC 192-16-070 based on the *Morillo* reasoning. We note the commissioner is without authority to enact regulations that grant benefits to employees disqualified by statute.[11]

Our decision is consistent with a recent agency decision in which the commissioner decided not to apply WAC 192--16-070 unless the employer is implementing involuntary reductions-in-force.[12] In *Marinkovic*, the employer offered a program in which employees in specific job categories could volunteer to terminate their employment in exchange for financial incentives. The commissioner reversed the grant of benefits because:

> The evidence shows that the second phase was not a true layoff or reduction-in-force. The employees had a choice whether or not to participate. . . . No one, including the claimants, was notified that he or she would be laid off. . . .
>
> WAC 192-16-070 sets forth four criteria in the conjunctive

---

[10]*Read*, 62 Wn. App. at 234-35.

[11]*See In re Jullin*, 23 Wn.2d 1, 15, 158 P.2d 319, 160 P.2d 1023 (1945).

[12]*In re Marinkovic*, Dep't of Empl. Sec. Comm'rs Dec. (2d) 848 (1995) (denoted as a precedential decision under RCW 50.32.095).

and provides that if all four criteria are met, a layoff or reduction-in-force will not be considered to be a *voluntary* quit pursuant to RCW 50.20.050. That the employees' participation in the layoff or reduction-in-force is involuntary is implicit in WAC 192-16-070 .[13]

Again, we do not reach the validity of WAC 192-16-070 or the commissioner's interpretation of it.

Goewert argues the focus should be on the employer's broader objectives in reducing the work force since "Anheuser Busch used the early retirement plan as a means of achieving a 10 percent reduction-in-force." This argument is without merit. The fact that Anheuser purposefully sought to eliminate 10 percent of its employees by offering them early retirement does not transmute that action into involuntary layoffs.

Because Goewert voluntarily brought about his own unemployment by choosing to retire he is disqualified from benefits under RCW 50.20.050. Employees are disqualified from receiving benefits if the employee intentionally takes steps to terminate his or her employment.[14] If an employee is laid off or terminated because of a reduction-in-force, the employee qualifies for benefits because the employee has lost his or her job involuntarily. Here, Goewert intentionally left his employment and, therefore, he voluntarily quit.[15]

Our decision is consistent with our decision in *Read v. Employment Sec. Dep't,* in which this court decided that if an employee leaves the company in exchange for early retirement benefits with no compulsion by the company,

---

[13]*In re Marinkovic,* Dep't of Empl. Sec. Comm'rs Dec. (2d) 848, at 5 (1995).

[14]*See Smith v. Department of Empl. Sec.,* 55 Wn. App. 800, 802, 780 P.2d 1335 (1989) (employee disqualified from benefits because he purposefully sought downgrade that would lead to layoff). *See also Korte v. Department of Empl. Sec.,* 47 Wn. App. 296, 301, 734 P.2d 939 (1987).

[15]*Smith v. Department of Empl. Sec.,* 55 Wn. App. at 802.

the employee has left the company "voluntarily."[16] Goewert distinguishes *Read* by relying on the commissioner's finding that Goewert was a member of the class of employees targeted for reduction-in-force. In *Read*, the employees were not in danger of losing their jobs because of their seniority and satisfactory job performance.[17] While Goewert was part of the class targeted for voluntary reductions that could lead to future involuntary reductions, this status is irrelevant since he was under no compulsion to retire at the time of his decision.

The commissioner also distinguished *Read* by noting that the choice to participate was not solely Goewert's to make because Anheuser reserved the right to deny an employee the ability to participate in its program. But the fact that an employer controls who can participate in its retirement program does not mean that the employer was compelling employees to retire.

■■ Anheuser's announcement that it would be reducing its work force and its inability to guarantee Goewert a job before the deadline to participate in the retirement program naturally caused Goewert to be concerned about his future. This uncertainty is not enough to establish that he quit voluntarily for good cause under RCW 50.20.050. An employee does not qualify for benefits if the employee quits because of mere uncertainty about whether his or her job will continue.[18] While Goewert's fears about the possibility of future involuntary terminations were understandable, these fears are personal reasons for leaving work, not "work connected factors."[19] In order to qualify for benefits, the reasons for quitting must be work

---

[16] 62 Wn. App. at 234-35.

[17] 62 Wn. App. at 234.

[18] *See Korte*, 47 Wn. App. at 302 ("[G]ood cause must be based upon existing facts as contrasted to conjecture.").

[19] *See Johns v. Department of Empl. Sec.*, 38 Wn. App. 566, 570, 686 P.2d 517 (1984); *Cowles Pub'g Co. v. Department of Empl. Sec.*, 15 Wn. App. 590, 593, 550 P.2d 712 (1976), *review denied*, 88 Wn.2d 1001 (1977).

related and must be external and separate from the claimant, not personal factors subjective to the claimant.[20]

In summary, we affirm the trial court's decision reversing the commissioner's grant of unemployment benefits to Goewert because Anheuser did not announce that it was implementing any layoffs or reductions-in-force and because Goewert voluntarily quit his employment.

AGID and ELLINGTON, JJ., concur.

Review denied at 131 Wn.2d 1005 (1997).

---

[20]*Davis v. Department of Empl. Sec.*, 108 Wn.2d 272, 276-77, 737 P.2d 1262 (1987) (good cause not established when employee quit to move to another location). *See Forsman v. Employment Sec. Dep't*, 59 Wn. App. at 81.