[Nos. 38718-9-I; 40905-1-I. Division One. April 6, 1998.]

TERESA ORTEGA, *Respondent*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Appellant*.

MICHAEL T. BELL, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

618

*Christine O. Gregoire, Attorney General*, and *Derek L. Edwards, Assistant*, for the Employment Security Department.

*William B. Knowles* and *Matthew J. Bean*, for appellant Bell and Respondent Ortega.

*Jeffrey C. Minzel* and *Harry J.F. Korrell III* of *Davis Wright Tremaine*, for intervenor Westinghouse Hanford.

COLEMAN, J. — These two cases arise from the 1995 and 1996 labor reductions at Westinghouse Hanford in response to budget constraints and funding uncertainties with the Department of Energy. Teresa Ortega and Michael Bell elected to participate in different phases of Westinghouse's Special Voluntary Reduction of Force (SVROF) incentive program and were denied unemployment benefits by the Department. We granted the Employment Security Department's motion to consolidate these cases because they are

factually similar and require us to answer the same legal question—whether the workers who participated in the SVROF qualify for unemployment benefits under WAC 192-16-070.

Bell and Ortega allege that they were entitled to unemployment benefits under an Employment Security Department rule that classifies the voluntary participation in a layoff or reduction-in-force as not a voluntary quit. The rule states:

> A layoff or reduction-in-force will not be considered to be a voluntary quit pursuant to RCW 50.20.050, if:
>
> (1) The employer announced a layoff or reduction-in-force; and
>
> (2) The claimant volunteered to be one of the people included in the layoff or reduction-in-force; and
>
> (3) The employer determines which individuals are laid off or released through a reduction-in-force; and
>
> (4) the employer accordingly laid off or released the claimant due to a reduction-in-force.

WAC 192-16-070. We find that the SVROF program of Westinghouse Hanford was neither a layoff nor reduction-in-force as required by WAC 192-16-070(1) and therefore affirm the denial of unemployment benefits by the Commissioner's Delegate.

## FACTS

Ortega resigned from Westinghouse Hanford on February 14, 1995, after signing a release in late January stating that she was voluntarily electing to participate in the SVROF. An administrative law judge (ALJ) initially granted Ortega unemployment benefits on the basis that she satisfied the elements of WAC 192-16-070. The Department and Westinghouse then appealed Ortega's case and 64 other similar cases that were consolidated for review by the

Department. *See In re Marinkovic,* Comm. Dec. (2d) 848 (1995).

Commissioner's Delegate Rhonda J. Brown set aside the ALJ's decision on July 31, 1995. The delegate stated that WAC 192-16-070 did not apply to Ortega's separation from Westinghouse because the SVROF was not a true layoff or reduction-in-force because the employees had a choice to participate. *In re Marinkovic,* No. 04-1995-1029OV, Dep't Emp. Sec. Comm'r Dec. No. 848 (July 31, 1995). The Superior Court reversed the delegate's decision on May 6, 1996, stating that the delegate ignored the plain language of WAC 192-16-070(2) that requires the claimant to voluntarily participate in the layoff or reduction-in-force. The Employment Security Department appealed to this court asking us to reverse the Superior Court and affirm the delegate's decision.

Bell was denied unemployment benefits by the Job Service Center and by an ALJ. On appeal, the same delegate affirmed the denial of benefits relying on this court's holding in *Anheuser Busch, Inc. v. Goewert,* 82 Wn. App. 753, 919 P.2d 106 (1996), *review denied,* 131 Wn.2d 1005 (1997). Bell appealed and the Superior Court affirmed. Bell now appeals the Superior Court's decision claiming that it is inconsistent with the plain meaning of WAC 192-16-070.

As a result of The National Defense Authorization Act of 1993, the Department of Energy (DOE) was required to develop a workforce restructuring plan for its contractors. Westinghouse Hanford, in conjunction with the DOE, implemented a three-phase plan to reduce its workforces. Phase One of the plan occurred in December 1994 with more than 800 employees accepting a voluntary early retirement plan. Phase Two, the SVROF that Ortega accepted, was announced on January 18, 1995. Phase Three, announced on April 19, 1995, included a second SVROF and an involuntary reduction-in-force program. To further reduce the size of its workforce by 300 to 500 employees, Westinghouse announced a third SVROF on January 10, 1996. This is the plan in which Bell participated.

The SVROF offered employees several severance pack-

ages, including cash payouts based on length of service, relocation costs, and/or educational stipends. Employees could volunteer for the program, but Westinghouse retained the right to determine which volunteering employees would be chosen to participate in the program. While Westinghouse disseminated information detailing its projections of the number of employees that would participate in each phase of the reduction, it did not fix a minimum number of participants who would be separated from employment in any of the phases except the involuntary reduction-in-force.

Notification of the SVROF in which Ortega participated included the following statement from Westinghouse Hanford's president:

> This is the second phase of a program designed to reduce the Hanford work force by up to 2,500 employees to meet the FY 1995 budget levels. During the first phase completed in December, 843 of your colleagues took a voluntary early retirement program. The next phase, an involuntary separation program, is expected to begin shortly after the completion of the voluntary separation program and approval of the Hanford Workforce Restructuring Plan by DOE Headquarters. That approval is anticipated by the end of January . . . .
>
> . . . .
>
> Every volunteer will reduce the number of employees that might otherwise be laid off involuntarily. Of course, I cannot guarantee that there will be no involuntary layoffs; nor should you infer that you are exempted from future involuntary reductions or transfers to other departments if your category is not one of those being targeted for reduction.

Ortega was in a class of 657 workers, 3 of which were targeted to be accepted under the SVROF. However, Westinghouse accepted 112 applicants from Ortega's job class.

Bell took advantage of the third offering of the SVROF because he was unsure of his future with the company. After losing his permanent position in mid-1995, Bell managed to find work on other projects but was in an "over-

head" position specifically targeted for future layoffs at the time he volunteered to participate in the SVROF.

## ISSUES

Standard of Review:

██ ██ Under the Administrative Procedure Act (APA), this court sits in the same position as the Superior Court and applies the standards of the APA directly to the record before the agency. RCW 34.05.570; *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). We may grant relief from an agency order if the "agency has erroneously interpreted or applied the law." RCW 34.05.570(3)(d). Courts give deference to interpretative administrative regulations. *Davis v. Employment Sec. Dep't*, 108 Wn.2d 272, 279, 737 P.2d 1262 (1987). However, we have the duty to ensure that rules are applied and interpreted consistently with the underlying statute. *See Federated Am. Ins. v. Marquardt*, 108 Wn.2d 651, 655, 741 P.2d 18 (1987) (regulation must be reasonably consistent with the statute being implemented); *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 392, 687 P.2d 195 (1984) (stating that the paramount concern of this court is to ensure that the statute is interpreted consistently with the underlying policy of the statute).

Unemployment Benefits:

Ortega and Bell allege that they qualify for unemployment benefits because they satisfy the four elements of the Employment Security Department rule that classifies the voluntary participation in a layoff or reduction-in-force as not being a voluntary quit without good cause under RCW 50.20.050. WAC 192-16-070. There is no dispute that Ortega and Bell satisfy elements two, three, and four of WAC 192-16-070 if element one is satisfied.[1] Thus, we must interpret the phrase "layoff or reduction-in-force" as used

---

[1] It is undisputed that Ortega and Bell volunteered to participate in the SVROF, that Westinghouse's express approval was required before an employee would be

in WAC 192-16-070(1) in the context of the underlying statute and policy behind the statute.

Generally, unemployed workers are eligible for benefits unless they are disqualified by statute. *Goewert*, 82 Wn. App. at 756 (citing *Meyering*, 102 Wn.2d at 389). A worker is disqualified from receiving unemployment benefits if he or she voluntarily leaves work without good cause. RCW 50.20.050(1). We have previously held that voluntary participation in an early retirement program does not constitute good cause for quitting work under RCW 50.20.050(1). *Goewert*, 82 Wn. App. at 760; *Read v. Employment Sec. Dep't*, 62 Wn. App. 227, 813 P.2d 1262 (1991). Our reasoning regarding voluntary early retirement programs is equally applicable to voluntary reduction-in-force plans.

In *Goewert*, the employer stated that it planned to reduce the work force by 10 percent but implemented an enhanced early retirement program prior to laying off any employee. *Goewert*, 82 Wn. App. at 755. We rejected Goewert's suggestion that the employer's objectives in implementing the program should be considered and instead stated, "Goewert intentionally left his employment and, therefore, he voluntarily quit." *Goewert*, 82 Wn. App. at 760 (footnote omitted). "Because Goewert voluntarily brought about his own unemployment by choosing to retire[,] he is disqualified from benefits under RCW 50.20.050." *Goewert*, 82 Wn. App. at 760. The *Goewert* court further stated:

> The employer must announce that it is instituting a layoff or a reduction-in-force, meaning involuntarily (sic) terminations of employment. To hold otherwise would contravene the purpose of the Employment Security Act of providing a source of income to those workers who are unemployed through "no fault of their own" and its purpose of reducing "involuntary unemployment." *Macey v. Department of Empl. Sec.*, 110

allowed to participate in the SVROF, and that both Ortega and Bell ceased employment at Westinghouse as a result of the SVROF.

Wn.2d 308, 315-16, 752 P.2d 372 (1988) (quoting RCW 50.01.010).

*Goewert*, 82 Wn. App. at 758.

Similarly, *Read* remains instructive even though it was decided before the 1993 enactment of WAC 192-16-070. The *Read* court relied on the then existing statutes and rules and found that voluntary participation in an early retirement plan did not satisfy the meaning of good cause. *Read*, 62 Wn. App. at 236-37 (citing WAC 192-16-009(1), (2)(b), (c), (3)(e), (f)). Instrumental to the *Read* court's reasoning was that the claimants did not volunteer to be laid off but rather elected to participate in a voluntary early retirement plan. *Read*, 62 Wn. App. at 234.

■ In this case, Ortega and Bell cite Westinghouse's statement that every employee who elected to participate in the SVROF would reduce the number of involuntary layoffs to support their contention that they volunteered to be part of an involuntary reduction-in-force and accordingly satisfied the first two elements of WAC 192-16-070. While "reduction-in-force" is used both in the rule and to describe the programs that Ortega and Bell participated in, we find that the phrase "reduction-in-force" in the rule is limited to programs where the work force will be reduced by imposing an involuntary reduction-in-force.

Our interpretation is consistent with the delegate's finding in Ortega's unemployment claim that the SVROF was not a true reduction-in-force but rather a voluntary work-separation program.

> We disagree with the conclusion of the Office of Administrative Hearings that WAC 192-16-070 is applicable. The employer's restructuring plan had three phases. The first phase, an early retirement plan offering financial incentives, was offered in late 1994. On January 18, 1995, the employer began the second phase of the restructuring plan, i.e., the Special Voluntary Reduction of Force (SVROF). The evidence shows that the second phase was not a true layoff or reduction in force. The employees had a choice whether or not to participate. Although the third phase, an involuntary reduction-in-force (*i.e.,* the employees would have no choice in whether to participate) was expected to begin shortly after the SVROF, no specific

layoff date had been announced by the employer at the time of the SVROF. No one, including the claimants, was notified that he or she would be laid off. Indeed, the third phase of the restructuring plan, *i.e.*, the involuntary reduction-in-force, was not implemented by the employer until on or about February 11, 1995.

Similarly, the *Goewert* court stated: "The commissioner erroneously interpreted the phrase 'reduction-in-force' to include all situations in which an employer reduces the number of its employees, not the 'involuntary' situations required under RCW 50.20.050." *Goewert*, 82 Wn. App. at 758.

The Ortega court erred in concluding that the administrative decision was arbitrary in requiring claimants to "show that they 'involuntarily' 'volunteered' to be considered for a reduction in force." Reading the rule to require a claimant to "involuntarily volunteer" results in an absurdity unsupported by the administrative rule and the delegate's decision. Rather, an employee must volunteer to participate in the mandatory phase of a layoff or reduction-in-force program. It is in this later circumstance that WAC 192-16-070 permits an employee who volunteers to participate, to leave employment without being considered to have voluntarily quit.

While it may be true that the eventual number of involuntary layoffs will be reduced by the number of employees who elect to participate in a voluntary plan, the fact remains that no employees will be terminated against their will in a voluntary program. Granting unemployment benefits to employees who elect to participate in a program that by itself is not guaranteed to reduce the work force would be contrary to the statutory goal of lessening the financial hardship to workers from involuntary unemployment. RCW 50.01.010.

Further support for this interpretation is found in the policy behind the rule. Without the rule, employees who volunteer to take one of the slots in an employer-initiated mandatory layoff or reduction-in-force would not be eligible

for unemployment benefits because they would have technically volunteered to leave their job. Prohibiting this group of volunteers from qualifying for unemployment would not further the objectives of the Security Employment Act of "reducing involuntary unemployment and the suffering caused thereby to the minimum." *See* RCW 50.01.010. It is only at the point when involuntary layoffs are initiated that granting an exception to volunteers will minimize unemployment related suffering. The same cannot be said for employees who elect to participate in voluntary programs because these programs do not in and of themselves create involuntary unemployment.

For example, there will be no layoffs or involuntary terminations in a voluntary program regardless of the lack of participation. But in an involuntary program, there will be layoffs if an insufficient number of employees volunteer. Thus, the Department's interpretation that WAC 192-16-070 creates only a narrow exception is consistent with the statutory policy that employees who leave work "voluntarily without good cause" are disqualified from unemployment benefits. RCW 50.20.050

For the reasons stated above, we hold that the phrase "layoff or reduction-in-force" in WAC 192-16-070(1) pertains only to those situations where the employer has instituted an involuntary program. The SVROF implemented by Westinghouse was not such a program as no employee would have been released against his or her wish.

We affirm the Superior Court in Bell and reverse in Ortega. The delegate's decisions denying Ortega and Bell unemployment benefits are affirmed.[2]

BECKER and ELLINGTON, JJ., concur.

Review granted at 136 Wn.2d 1028 (1998).

---

[2]We deny Bell's motion to supplement the record because none of the supplemental information is needed for us to decide the proper application of WAC 192-16-070. *See* RCW 34.05.062.