CAROLINA POWER & LIGHT COMPANY, Petitioner v. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA and HERMAN D. ROBERTS, Respondents

No. 441A08

(Filed 28 August 2009)

**Unemployment Compensation— acceptance of voluntary early retirement package—left employment without good cause attributable to employer**

The Court of Appeals erred by concluding that an employee who accepts a Voluntary Early Retirement Package ("VERP"), offered by the employer as part of a company-wide downsizing, is

---

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

eligible for unemployment insurance benefits under N.C.G.S. Ch. 96, and the case is remanded to that court for further remand to the superior court with directions for that court to remand this matter to the Employment Security Commission for further proceedings not inconsistent with this opinion, because under these facts of this case, claimant left his employment without good cause attributable to the employer when: (1) the emphasis placed by the Commission and claimant on the failure of claimant's supervisor to tell claimant whether he would have a job after a downsizing was completed was misplaced since to construe the failure to answer that question as good cause assumes that claimant, who from the record appeared to have been an employee at will, was entitled to an assurance tantamount to a contract guaranteeing him a job after the downsizing was completed; (2) claimant presented no evidence, and the Commission made no finding, that the employer knew the answer to claimant's question (concerning whether he would have a job after the downsizing was completed) before the deadline for accepting the VERP had expired; (3) the mere offering of the VERP by the employer as part of its efforts to downsize cannot be a good cause entitling claimant to benefits in that claimant had to submit a written application in order to accept the program; (4) if, under N.C.G.S. § 96-14(1), the employee who has been told that he or she will be terminated on a certain date is disqualified from receiving benefits when he or she leaves before the stated date, then permitting the employee who has not been told that he or she will be terminated to leave and obtain unemployment benefits on the basis that the employee accepted the offer of enhanced early retirement would create an inconsistency and inequity in the law; and (5) an employee can leave work for "good cause" under circumstances which make continued work logistically impractical including scheduling and transportation problems that outweigh the benefits of employment, or an employee can leave work for "good cause" when the work or work environment itself is intolerable, but neither situation was applicable in the instant case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 192 N.C. App. ——, 665 S.E.2d 141 (2008), affirming a judgment entered 28 August 2006 by Judge A. Leon Stanback, Jr. and an order entered 19 July 2007 by Judge Paul G. Gessner, both in Superior Court, Wake County. Heard in the Supreme Court 25 February 2009.

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

*Cranfill Sumner & Hartzog LLP, by Norwood P. Blanchard, III, for petitioner-appellant.*

*Thomas S. Whitaker, Chief Counsel, and Thomas H. Hodges, Jr. for respondent-appellee Employment Security Commission of North Carolina.*

PARKER, Chief Justice.

The sole issue on this appeal is whether an employee who accepts a Voluntary Early Retirement Package ("VERP"), offered by the employer as part of a company-wide downsizing, is eligible for unemployment insurance benefits under Chapter 96 of the North Carolina General Statutes. We reverse the Court of Appeals and hold that the employee is ineligible for benefits.

Herman D. Roberts (claimant) was employed by Carolina Power & Light Company ("CP&L") as a field service representative. In January 2005 CP&L offered voluntary early retirement to several employees, including claimant. Claimant accepted the VERP, and his last day of work with CP&L was 31 May 2005.

After retiring, claimant filed an initial claim for unemployment insurance benefits effective the week beginning 24 July 2005. His claim was denied by the Employment Security Commission ("Commission") adjudicator. The appeals referee reversed the adjudicator. CP&L appealed to the Commission which upheld the decision of the appeals referee. CP&L next appealed to Superior Court, Wake County, which affirmed the decision of the Commission awarding benefits. CP&L gave notice of appeal to the Court of Appeals, which, in a divided opinion, affirmed the decision of the Superior Court. Based on the dissenting opinion in the Court of Appeals, CP&L appealed to this Court.

Inasmuch as CP&L has not challenged the Commission's findings of fact, this Court is bound by those findings, and the only question is whether the findings of fact support the conclusions of law. *See, e.g., State ex rel. Employment Sec. Comm'n v. Jarrell*, 231 N.C. 381, 384, 57 S.E.2d 403, 405 (1950). We review the Commission's conclusions of law de novo.

The Commission made the following findings of fact:

2[.] The claimant began working for the employer on March 21, 1981[.] He last worked for the employer on May 31, 2005, as a field service representative[.]

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

3[.] The employer began downsizing its field service representative positions in January 2005[.] During this time, the claimant was informed that his position as field service representative had been eliminated and he was going to be assigned to a temporary position in Clinton, North Carolina[.] The claimant was told that he would be in Clinton until the downsizing was completed[.]

4[.] The claimant asked his supervisor and operations manager if he was going to be transferred back to his field service representative position in Whiteville, North Carolina, or if he was going to Wilmington, North Carolina. The claimant was never given an answer[.]

5[.] In January 2005, the employer offered several employees, including the claimant, an early retirement package[.] The claimant asked his supervisors if he would still have a job if he did not accept the early retirement package[.] The claimant's question was never answered so he accepted the early retirement package.

Based on these findings, the Commission concluded as a matter of law that claimant "left work within the meaning of the law" and that he did so for "good cause attributable to the employer."

The statutory provisions applicable to this appeal are N.C.G.S. § 96-14(1) and (1a). A claimant is disqualified from receiving benefits if the claimant is "at the time such claim is filed, unemployed because he left work without good cause attributable to the employer." N.C.G.S. § 96-14(1) (2007). Further, "[w]here an individual leaves work, the burden of showing good cause attributable to the employer rests on said individual, and the burden shall not be shifted to the employer." N.C.G.S. § 96-14(1a) (2007).

In this case the Commission's conclusion that claimant left work is undisputed. Thus, to resolve this appeal we must determine whether claimant's acceptance of the VERP which triggered his departure amounted to good cause for leaving his employment and if so, whether the good cause was attributable to CP&L. This Court has defined "good cause" as "a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work." *Intercraft Indus. Corp. v. Morrison*, 305 N.C. 373, 376, 289 S.E.2d 357, 359 (1982) (citing *In re Watson*, 273 N.C. 629, 161 S.E.2d 1 (1968)). A separation is attributable to the employer if it was " 'produced, caused, created or as a result of actions by the employer.' "

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

*Couch v. Employment Sec. Comm'n*, 89 N.C. App. 405, 409-10, 366 S.E.2d 574, 577 (quoting *In re Vinson*, 42 N.C. App. 28, 31, 255 S.E.2d 644, 646 (1979) (internal quotation marks omitted)), *aff'd per curiam*, 323 N.C 472, 373 S.E.2d 440 (1988). Within the framework of these definitions, the Commission's findings of fact point to three possible actions attributable to the employer that could have been factors in claimant's acceptance of the VERP, namely, (i) the downsizing of the workforce, (ii) the supervisor's failure to answer claimant's question about his future employment, and (iii) the employer's offering of the VERP. The question then becomes whether any one of these actions as a matter of law constituted good cause for claimant to accept the VERP and leave his employment. We conclude that none of them does.

Downsizing of the workforce is a recognized means by which corporations and businesses maintain their productivity and profitability. Although downsizing may ultimately lead to the loss of some jobs, downsizing to a desired number of employees is often achieved through attrition. Downsizing or a reduction in force does not automatically trigger layoffs. In fact, the evidence in this case and the findings by the Commission based thereon would suggest that CP&L was utilizing this process, a part of which was the offering of an enhanced early retirement package. When claimant's position in Whiteville, North Carolina, was eliminated, claimant was moved to Clinton, North Carolina, and, as the Commission found, was told that he would be there until the downsizing was completed. Nothing in that process suggests that claimant was to be terminated. The emphasis placed by the Commission and claimant on the failure of claimant's supervisor to tell claimant whether he would have a job after the downsizing was completed is misplaced. To construe the failure to answer that question as good cause assumes that claimant, who from the record appears to have been an employee at will, was entitled to an assurance tantamount to a contract guaranteeing him a job after the downsizing was completed. An employee who has no such guarantee of a job before the employer begins downsizing certainly has no legal basis to use the failure of the employer to give such assurances as good cause entitling him to unemployment benefits when he voluntarily accepts an enhanced early retirement package. Moreover, claimant presented no evidence, and the Commission made no finding, that CP&L knew the answer to claimant's question before the deadline for accepting the VERP had expired. Finally, the mere offering of the VERP by CP&L as part of its efforts to downsize

IN THE SUPREME COURT          567

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

cannot be a good cause entitling claimant to benefits in that claimant had to submit a written application in order to accept the program. The Commission made no finding that CP&L forced claimant or any other employee to accept the VERP.

While this case appears to be one of first impression in this jurisdiction, our conclusion that claimant is disqualified from receiving benefits is consistent with the policy enunciated by our General Assembly and the holdings of this Court. Under N.C.G.S. Chapter 96, section 14:

> Where an employee is notified by the employer that such employee will be separated from employment on some future date and the employee leaves work prior to this date because of the impending separation, the employee shall be deemed to have left work voluntarily and the leaving shall be without good cause attributable to the employer.

N.C.G.S. § 96-14(1). If, under this statute, the employee who has been told that he or she will be terminated on a certain date is disqualified from receiving benefits when he or she leaves before the stated date, then permitting the employee who has not been told that he or she will be terminated to leave and obtain unemployment benefits on the basis that the employee accepted the offer of enhanced early retirement would create an inconsistency and inequity in the law. *See Poteat v. Employment Sec. Comm'n*, 319 N.C. 201, 202, 353 S.E.2d 219, 220 (1987) (noting the enactment of this statutory provision and holding that the employee was not entitled to benefits for the period of time she was unemployed before the termination would have become effective).

Although not necessarily in the context of applying N.C.G.S. § 96-14(1), an examination of our jurisprudence as to what constitutes "good cause" reveals two broad categories. First, an employee can leave work for "good cause" under circumstances which make continued work logistically impractical. Such circumstances include scheduling and transportation problems that outweigh the benefits of employment. *See Barnes v. Singer Co.*, 324 N.C. 213, 217-18, 376 S.E.2d 756, 758-59 (1989) (finding that the employee still qualified for benefits after quitting her job because the employer moved and the employee did not have transportation to the new location); *Intercraft Indus. Corp. v. Morrison*, 305 N.C. at 377, 289 S.E.2d at 360 (accepting that the inability to find child care could constitute "good cause" for missing scheduled work days); *Couch v. Employment Sec.*

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

*Comm'n,* 89 N.C. App. at 412, 366 S.E.2d at 578 (finding that when the employer reduced the employee's hours so that the commute was no longer worth the wages, the employee had good cause to quit); *Milliken & Co. v. Griffin,* 65 N.C. App. 492, 497, 309 S.E.2d 733, 736 (1983) (finding that an employee quit with "good cause" when health reasons prevented her from working shifts of the length required in her particular position), *disc. rev. denied,* 311 N.C. 402, 319 S.E.2d 272 (1984).

Second, an employee can leave work for "good cause" when the work or work environment itself is intolerable. Examples of circumstances making work environments intolerable include racial discrimination, tensions following an offensive confrontation, and assignments that violate professional ethics. *See Poteat v. Employment Sec. Comm'n,* 319 N.C. at 204, 353 S.E.2d at 221 (holding that an employee did not have "good cause" to leave before a scheduled termination date when nothing "suggest[ed] that notice of impending termination was so offensive as to embarrass or humiliate the claimant"); *In re Bolden,* 47 N.C. App. 468, 471-72, 267 S.E.2d 397, 399 (1980) (remanding for findings as to whether claimant left her job on account of racial discrimination which would constitute good cause); *In re Clark,* 47 N.C. App. 163, 167, 266 S.E.2d 854, 856 (1980) (holding claimant had good cause to quit when she "felt that she could no longer ethically continue her employment").

In the case at bar, claimant left work even though continued work was neither logistically impractical nor intolerable. CP&L eliminated claimant's original position and moved him to a new position in a new location. However, the Commission made no finding of fact that this change made claimant's ability to report for work each day logistically impractical. From the record, we can only conclude that he reported to work in Clinton each day without difficulty and that nothing would have prevented his continued attendance beyond his eventual retirement date. Even if some logistical difficulty beyond the scope of the record were introduced, it would be hard to show how such difficulty resulted from CP&L's decision to offer enhanced retirement packages.

Further, claimant left the job even though continued work was in no way intolerable. While claimant's position had changed, nothing in the Commission's findings of fact suggests that the new position was in any way disagreeable, even though it was in a new location and was temporary in nature. Further, CP&L's offer of an early retirement package did not in any way affect the quality of the position claimant

CAROLINA POWER & LIGHT CO. v. EMPLOYMENT SEC. COMM'N OF N.C.

[363 N.C. 562 (2009)]

occupied when he left work. Claimant presented no evidence that the program's existence created a hostile or unpleasant work environment, or somehow negatively affected the quality of the work itself. Thus, the retirement program does not constitute "good cause" for the separation.

Moreover, the conclusion we reach today is consistent with decisions from other jurisdictions that have addressed this issue. While not binding on this Court, the decision in *Anheuser Busch, Inc. v. Goewert*, 82 Wash. App. 753, 919 P.2d 106 (1996), *disc. rev. denied*, 131 Wash. 2d 1005, 932 P.2d 644 (1997), is instructive. In *Goewert* the employer set a goal of a ten percent reduction in force and offered an early retirement package to employees over age fifty-three. *Id.* at 755, 919 P.2d at 108. The employer stated that if the goal was not achieved by late 1994, the employer would institute involuntary terminations. *Id.* Goewert attempted to ascertain whether he would be laid off, but the employer could not guarantee Goewert a job before the deadline for accepting early retirement. *Id.* at 755-56, 919 P.2d at 108. The court held that Goewert had voluntarily brought about his own unemployment and was not entitled to benefits. The court stated: "While Goewert's fears about the possibility of future involuntary terminations were understandable, these fears are personal reasons for leaving work, not 'work connected factors.' In order to qualify for benefits, the reasons for quitting must be work related and must be external and separate from the claimant." *Id.* at 761-62, 919 P.2d at 111 (footnote omitted); *see also Shields v. Proctor & Gamble Paper Prods. Co.*, 164 S.W.3d 540, 544-45 (Mo. Ct. App. 2005) (holding that when the employer had no plans to implement involuntary layoffs if its retirement packages did not achieve the desired reduction in the workforce, the claimant did not have good cause for leaving his employment by accepting the offer of early retirement); *In re Claim of Joseph*, 246 A.D.2d 944, 944-45, 667 N.Y.S.2d 849, 849 (App. Div. 1998) (mem.) (holding that participating in an early retirement program when continuing work is available does not constitute good cause for leaving one's employment even though the employee testified that he opted for early retirement "because he thought he would be laid off"); *George v. Unemployment Comp. Bd. of Review*, 767 A.2d 1124, 1129 (Pa. Commw. Ct. 2001) (holding that a claimant's speculation that he would possibly be laid off as part of a reduction in force did not establish "necessitous and compelling reasons for accepting the early retirement incentive and voluntarily terminating his employment"). *But see White v. Dir. of Div. of Employment Sec.*,

**IN RE M.G., M.B., K.R., J.R.**

[363 N.C. 570 (2009)]

382 Mass. 596, 598-99, 416 N.E.2d 962, 964 (1981) (remanding to the division to determine if the claimant "reasonably believed his discharge was imminent" when he accepted the early retirement).

The Commission made no finding of fact that CP&L had announced layoffs. Claimant had a job. Claimant, a twenty-four year veteran employee, elected to accept the VERP and thereby terminate his employment. The Commission made no finding that claimant would not have continued to have a job. Under these facts, for the reasons stated above, we conclude that claimant left his employment without good cause attributable to the employer and is, therefore, disqualified from receiving unemployment insurance benefits. N.C.G.S. § 96-14(1).

The decision of the Court of Appeals is reversed, and the case is remanded to that court for further remand to the Superior Court, Wake County, with directions that that court remand this matter to the Employment Security Commission for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.