# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ASHLEY LEMAY,<br><br>          Appellant,<br><br>   v.<br><br>STATE OF WASHINGTON<br>DEPARTMENT OF CHILDREN, YOUTH,<br>AND FAMILIES.<br><br>          Respondent. | No. 56539-1-II<br><br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Ashley LeMay appeals an order by the Board of Appeals (Board) for the Department of Children, Youth, & Families (DCYF) affirming founded findings and a conclusion of physical abuse. LeMay argues that the Board committed errors of law. LeMay also argues the Board's order is not based on substantial evidence and is arbitrary or capricious. We affirm the Board's order.

## FACTS

I. BACKGROUND

On the morning of March 17, 2019, LeMay's sons, C.A. and K.A., came into her bedroom asking for breakfast. At the time, C.A. was eight years old, and K.A. was ten years old. LeMay asked the boys to pick a number between one and 100 to determine who would get breakfast first, and C.A. guessed closer to the correct number. K.A. yelled, went to his room, slammed the door, and threw things.

C.A. went downstairs to eat breakfast, and LeMay went into K.A.'s room. LeMay was frustrated and told K.A. not to throw things or slam his door. LeMay was in K.A.'s room for around one minute. From where C.A. was eating breakfast, K.A.'s bedroom upstairs was not visible.

II. C.A.'s AND K.A.'s DISCLOSURES

The next day, C.A. went to school. C.A.'s classroom had a "sensory room" where students could go for a break from the classroom. C.A. went to the sensory room, and a volunteer, Carrie Taylor, thought that C.A. seemed nervous and upset.

Taylor asked C.A. what was going on and if he was okay. C.A. told Taylor that his brother, K.A., was sick. C.A. then stated that K.A was not really sick, but just did not want to come to school because he had scratches on his face and did not want to be asked questions or teased.

Taylor immediately reported C.A.'s statements to the school counselor, Jill Smith. Smith called Child Protective Services (CPS) to report C.A.'s statements, and Taylor relayed to CPS over the phone the disclosure made by C.A.

The following day, K.A. and C.A. both went to school. Jessica Chavez, a CPS employee, went to investigate the disclosures at K.A. and C.A.'s school. When Chavez spoke to K.A., she saw marks on K.A.'s face. K.A. told her that he got the marks when he fell out of a tree and into a bush.

Chavez also spoke to C.A. at the school the same day. C.A. said he saw LeMay go into K.A.'s room with a belt on the morning of March 17. C.A. stated that K.A. did not have marks on his face when he went into his bedroom, but had marks after LeMay left his bedroom.

At the school, while being observed by Taylor, K.A. and C.A. were talking together. The boys were sitting across from each other at a table, and Taylor heard K.A. say "You idiot. You idiot. You're not supposed to tell." Clerk's Papers (CP) at 651. As C.A. was crying, K.A. made statements like it was C.A.'s fault, it was "[C.A.] who had said something," and "[K.A.] didn't say anything." CP at 804. Later that day, Chavez took K.A. and C.A. to the CPS office and into protective custody.

At the CPS office, C.A. began recounting to Chavez the details of what happened on March 17 and made statements like "you have to be careful of what you say," "[o]therwise, I'll end up in a situation like this," and he would be "[t]aken away." CP at 807-08. Chavez then spoke to K.A. again. This time, K.A. changed his story and told Chavez that the marks on his face were from LeMay hitting him with a belt. K.A. said LeMay hit him on his head, butt, and feet while he laid in the fetal position, trying to keep from getting hit. K.A. stated that after being hit, he was not able to walk and had ringing in his head.

On March 21, K.A. underwent a forensic interview at a children's hospital. K.A. said LeMay had hit him with a belt, the same version of the story he told Chavez at the CPS office.

III. ADMINISTRATIVE PROCEEDINGS

One week later, the Department of Social and Health Services issued founded findings that LeMay physically abused K.A. LeMay sought agency review of the founded findings, but the decision was upheld by an area administrator.

LeMay requested an administrative hearing with DCYF. During a prehearing conference, the administrative law judge (ALJ) found that there were compelling reasons for K.A. to testify, but none of the attorneys indicated they intended to call C.A. as a witness.

3

The administrative hearing took place on October 19, 2020. During the hearing, K.A. testified that he promised to be truthful. K.A. changed his story again, denying that LeMay hit him with a belt and saying he made it up.

C.A. was not called as a witness. However, Taylor and Chavez testified about the events of March 18 through 20, 2019, including recounting C.A.'s disclosures to them that LeMay hit K.A. with a belt.

Family members of K.A. and C.A. testified at the hearing. The family witnesses stated that C.A. was generally truthful but that K.A. had a reputation for not telling the truth.

In December 2020, the ALJ affirmed the founded findings in an initial order. Just over two months later, the DCYF Board's chief review judge agreed with the ALJ's initial order and affirmed the founded findings and conclusions in a review decision and final order (Board's order).

The Board's order included the following findings of fact:

4.22 Afterwards, Ms. Chavez spoke with [K.A.]. She told him to not be worried, and that sometimes kids' parents make mistakes and it is her job to help them find a better way to discipline their children. [K.A.] then disclosed to her a very different version of events than the one he provided at school. The new version of events matched what [C.A.] had shared, with the addition of what happened once his mother reached his room. He stated that he got up early, before his brother, and that his brother usually gets to eat breakfast first. [K.A.] and [C.A.] had to choose a number between 1 and 100, and [C.A.] guessed the closer number. [K.A.] then stomped off to his bedroom and slammed the door. His mother then arrived to his room with a belt in her hand and closed the blinds. [K.A.] went to a corner of his room, and his mother hit him on his head, behind, and feet with the belt loop. [K.A.] said he was curled up on the ground trying to keep from getting hit. He said he wasn't able to walk as well afterward, and he had ringing in his ears.

. . . .

4.24 Like the ALJ, the undersigned Review Judge notes that there does not seem to have been a point from the time the children left the school to the time [K.A.]

4

disclosed abuse to Ms. Chavez, when the children were left alone to consult with each other and make any kind of effort to match their stories.

. . . .

4.38  No party or witness has alleged that [C.A.] has a problem with truthfulness. All parties and witnesses who spoke on the matter seem to find that [C.A.] is generally a truthful child.

. . . .

4.47  This case began, not due to any statement made by [K.A.], but by a statement made by his brother, [C.A.].  [C.A.] has been described by all parties to be truthful and a generally better-behaved child.  Additionally, [C.A.] made his disclosure to Ms. Taylor, and not to Ms. Smith, whom the Appellant suspects of having a bias against her.  In fact, any decision with regard to the veracity of the events in question that the undersigned Review Judge makes in this matter, is not based upon any statement made by Ms. Smith, who seems to have almost no first-hand knowledge of the statements made by the children or the events in question.

4.48  At no point after the investigation began, does it appear that [C.A.] and [K.A.] had enough time, or any time, to coordinate, or even discuss, their versions of the events in question.  Despite this, once removed from the school environment, and from their parents' care, [K.A.]'s story changed to match [C.A.]'s in striking similarity, with the added details of what actually occurred once [K.A.]'s mother entered his room.

. . . .

4.50  Therefore, like the ALJ, the undersigned Review Judge finds that [K.A.]'s statements to Ms. Chavez at the CPS office and during the forensic interview are the most credible statements in this matter, because they most closely match and complement [C.A.]'s statements to Ms. Taylor and later to Ms. Chavez.

CP at 17-18, 21-23 (footnotes omitted).

The Board's order also included the following conclusions of law:

5.4  Hearsay is a statement made outside of the hearing used to prove the truth of what is in the statement.  Hearsay evidence is admissible if it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their own affairs.  Although findings may be based on such evidence even if it would be inadmissible in a civil trial, the presiding officer shall not base a finding exclusively

5

on such inadmissible evidence unless the presiding officer determines that doing so would not unduly abridge the parties' opportunities to confront the witnesses and rebut the evidence.

5.5  Here, in addition to the exhibits, the parties' witnesses offered live testimony. [K.A.] was also given the opportunity to provide testimony.  The Appellant had an opportunity to cross-examine all of the witnesses and present her own evidence in rebuttal.  No party requested to have [C.A.] provide testimony, though he made the original allegation.

5.6  Though [C.A.]'s disclosure of the abuse of his brother is, in fact, hearsay, it is the kind of disclosure that reasonably prudent persons are accustomed to rely on in the conduct of their own affairs, in that it was spontaneous and provided to a non-interested third party, and made by a child known to be truthful, and who is, himself, essentially a third party who had no known reason to be untruthful.  Additionally, nothing prevented any party from requesting that [C.A.] be permitted to provide live testimony, as they successfully requested for [K.A.].  Like the ALJ, the undersigned Review Judge relies upon [C.A.]'s hearsay statement primarily as confirmation of his brother's statements made to the CPS investigator, and later made in the forensic interview, given the similarity and complementary nature of the two statements, one to the other.  [C.A.]'s statements were also corroborated by the fact that his brother did, in fact, have marks on his face, when he returned to school the next day.

. . . .

5.8  Here, it is clear that the Appellant meant to discipline her child.  However, hitting a child with a belt, essentially wherever she could reach him, is not a reasonable use of corporal punishment.  The fact that the corporal punishment left marks on his face, caused by a belt, is especially egregious.  While this child is no doubt very challenging, and while he may have exceptionally difficult behaviors over the long-term, his short-term behavior of slamming a door and/or yelling in reaction to not getting to eat breakfast first was relatively mild, if inappropriate for a 10 year-old child.  The Appellant's excessive discipline resulted in scratches on [K.A.]'s face that did not dissipate for at least several days.  [K.A.] stated he had difficulty walking and his ears rang after he was disciplined.  [K.A.] missed school the following day, either due to the repercussions of the beating or because the family did not want him to be subject to questions.  After reviewing all of the evidence provided, the undersigned Review Judge finds that the Appellant physically abused [K.A.] on this occasion, and that her actions do not meet the definition of reasonable use of corporal punishment.

CP at 24-27 (footnotes and emphasis omitted).

No. 56539-1-II

LeMay sought judicial review, and the superior court affirmed the Board's order. LeMay appeals.

ANALYSIS

I. LEGAL PRINCIPLES

The Administrative Procedure Act (APA)[1] governs judicial review of decisions from an administrative board. RCW 34.05.510; *Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). When reviewing an administrative decision, we sit in the same position as the superior court and apply the APA to the record before the Board. *Id.* Under the APA, we will only grant relief from an agency's adjudicative order if it fails to meet one of the nine standards from RCW 34.05.570(3). *Lewis County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 157 Wn.2d 488, 498, 139 P.3d 1096 (2006).

Here, LeMay asserts three grounds for relief under RCW 34.05.570(3):

(d) The agency has erroneously interpreted or applied the law;

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;

. . . .

(i) The order is arbitrary or capricious.

The burden to demonstrate the invalidity of an administrative agency's action is on the party asserting invalidity. RCW 34.05.570(1)(a).

---

[1] Ch. 34.05 RCW.

7

II. ADMISSION OF C.A.'S HEARSAY STATEMENTS

LeMay argues she is entitled to relief under RCW 34.05.570(3)(d) because the Board committed errors of law when it admitted C.A.'s hearsay statements. LeMay contends that the admission of this evidence was an error of law because C.A.'s hearsay statements were not reliable and C.A. was not available to testify. We determine that C.A.'s hearsay statements were properly admitted.

We apply the "error of law" standard to determine whether an agency erroneously interpreted the law. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 391, 687 P.2d 195 (1984) (conclusions of law are reviewed for an error of law); *Kenmore MHP LLC v. City of Kenmore*, 21 Wn. App. 2d 1, 12, 504 P.3d 237, *review granted*, 200 Wn.2d 1001 (2022). The error of law standard "calls for de novo judicial review of the administrative decisions and allows the reviewing court to essentially substitute its judgment for that of the administrative determination, though substantial weight is accorded [to] the agency's view." *Safeco Ins. Cos.*, 102 Wn.2d at 390 (internal quotation marks omitted).

At a DCYF hearing, the ALJ may only admit hearsay evidence "on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." WAC 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(2); *also* RCW 34.05.452(1). The Board may base findings of fact solely on hearsay evidence if "doing so would not unduly abridge the parties' opportunities to confront witnesses and rebut evidence." RCW 34.05.461(4).

Here, LeMay argues the admission of C.A.'s hearsay statements was an error of law for two reasons. LeMay's first argument is that C.A.'s statements did not have any of the required

indicia of reliability as that concept is described by our Supreme Court in *State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982).  We disagree.

In *Parris*, our Supreme Court set out factors of reliability for hearsay statements as follows:

(1)  whether there is an apparent motive to lie;

(2)  the general character of the declarant;

(3)  whether more than one person heard the statements;

(4)  whether the statements were made spontaneously; and

(5)  the timing of the declaration and the relationship between the declarant and the witness.

*Id.* at 146.

*Parris*, however, was a criminal case, not an administrative law case, and LeMay does not explain why those factors should be strictly applied to the Board in the administrative context.  It is true that the *Parris* factors have been referenced in the administrative context in *Fettig v. Department of Social & Health Services*, 49 Wn. App. 466, 475, 744 P.2d 349 (1987) (case involving child hearsay regarding sexual abuse in an administrative proceeding), *review denied*, 110 Wn.2d 1003 (1988).  The *Fettig* court recognized there were "no specific rules governing the admissibility of [that] type of evidence in administrative proceedings . . . ." *Id.* at 473.  The court then utilized the *Parris* factors for admissibility of a hearsay statement from the criminal context only as a "reference point," acknowledging that the APA has more relaxed standards for admitting hearsay evidence. *Id.*  Neither *Fettig* nor any other case stands for the proposition that the *Parris* factors should be applied in administrative hearings.

Here, the Board applied the correct, and more relaxed, standard for administrative hearings; hearsay evidence may be admitted when reasonably prudent persons would rely on that evidence in the conduct of their own affairs. WAC 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(2); RCW 34.05.452(1). The Board reasonably explained how it arrived at its conclusion, citing not only C.A.'s general reputation for truthfulness,[2] but also the consistency of C.A.'s statements over those critical first few days of the investigation. Considering the general concern with hearsay is truthfulness, especially with child witnesses, the Board's unchallenged findings of C.A.'s truthfulness (findings of fact 4.38 and 4.47), together with C.A.'s consistent story, demonstrate a correct application of the more relaxed administrative standard for the admissibility of these statements, specifically that a reasonable person would have relied on C.A.'s hearsay statements.

Because the Board applied the correct, more relaxed, standard of WAC 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 and RCW 34.05.452(1) to admit C.A.'s hearsay statements, the Board did not err. LeMay's argument that the *Parris* factors, rather than WAC 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 and RCW 34.05.452, control the admissibility of hearsay statements in an administrative proceeding fails.[3] We reject LeMay's first argument.

LeMay's second argument for why it was legal error to admit C.A.'s out-of-court statements is that C.A. was not available to testify. LeMay argues both that the administrative

---

[2] The Board found in findings of fact 4.38 and 4.47 that C.A. was generally a truthful child. LeMay did not challenge these findings of fact, and they are therefore verities on appeal. *Darkenwald v. Emp. Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015).

[3] The *Parris* factors are not controlling of whether hearsay is reliable in the administrative context, but, like the *Fettig* court, the Board may use the factors as guidance. *See Fettig*, 49 Wn. App. at 473.

rules required C.A. to testify and the burden was on DCYF to secure C.A.'s presence at the hearing to assure LeMay the opportunity to rebut C.A.'s hearsay statements with live testimony. We disagree.

As an initial matter, LeMay appears to cite to the wrong standard. LeMay cites WAC 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(3) to show that the ALJ may only base a finding on hearsay evidence when the parties had an opportunity to question or contradict the hearsay.[4] However, WAC 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 does not apply; it relates only to proceedings before the Department of Social and Health Services. The rule for admitting hearsay evidence in proceedings before DCYF is WAC 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, which does not include a similar requirement. Generally, the APA allows findings of fact based solely on evidence that would be inadmissible at trial when "doing so would not unduly abridge the parties' opportunities to confront witnesses and rebut evidence." RCW 34.05.461(4). Without a different requirement contained in the applicable WAC, the APA's more general standard applies in this case.

LeMay's principal argument is that it was CPS's burden to call C.A. as a witness to enable the Board to admit his hearsay statements. However, this argument, again, relies on the requirements of the inapplicable WAC 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(3). Further, RCW 34.05.461(4) does not require that DCYF affirmatively call C.A. as a witness for the Board to rely on his hearsay statements. Again, the APA only requires that the Board not rely solely on hearsay evidence such

---

[4] LeMay also claims that the requirement to be able to confront hearsay witnesses under the WAC and APA are analogous to the requirements of RCW 9A.44.120, which generally requires children to testify in criminal sexual abuse proceedings. RCW 9A.44.120 is inapplicable because, on its face, the statute applies only to criminal cases. And LeMay offers no persuasive reason to apply a criminal statute in the more relaxed evidentiary rules applicable to the administrative context.

that it "unduly abridge[s] the parties' opportunities to confront witnesses and rebut evidence." RCW 34.05.461(4). The statute falls well short of obligating DCYF to affirmatively offer the witness at the hearing.

Also, LeMay has not shown that she was prevented from calling C.A. as a witness herself. As pointed out by the Board in conclusion of law 5.6, "nothing prevented any party from requesting that [C.A.] be permitted to provide live testimony." CP at 25. LeMay has not offered any evidence that C.A. was not equally available to testify for either side. Thus, LeMay has not shown her opportunity to confront C.A. and rebut his hearsay evidence was "unduly abridged" in violation of RCW 34.05.461(4) or that it was improper for the Board to rely on C.A.'s statements in making its decision.

We determine that LeMay has not met her burden to show the Board committed an error of law when it admitted C.A.'s hearsay statements because she has not shown that the Board applied an incorrect standard for the reliability of C.A.'s hearsay statements or that she was unduly prevented from confronting C.A. and rebutting his statements.

III. K.A.'S TESTIMONY

LeMay next argues that the Board erred under RCW 34.05.570(3)(e) because its order was not supported by substantial evidence in two areas related to K.A.'s testimony. LeMay challenges two findings of fact, specifically the Board's determination that (1) K.A. and C.A. did not have time to match their stories and (2) K.A.'s statements to Chavez were credible. Once these two findings of fact are properly stricken, LeMay argues, the Board's ultimate conclusion that LeMay physically harmed K.A. is unsupported and cannot stand. We determine that LeMay fails to show

12

the findings of fact were unsupported by substantial evidence and, therefore, fails to show that the Board erred in its conclusion of abuse.

A. SUBSTANTIAL EVIDENCE TO SUPPORT FINDINGS OF FACT

LeMay argues that finding of fact 4.48 (determining that K.A. and C.A. did not have time to match their stories) and finding of fact 4.50 (determining that K.A.'s statements to Chavez were credible) were not supported by substantial evidence. We disagree.

We apply a substantial evidence standard when considering factual challenges. *Bond v. Dep't of Soc. & Health Servs.*, 111 Wn. App. 566, 572, 45 P.3d 1087 (2002). The substantial evidence standard is "highly deferential." *ARCO Prods. Co. v. Wash. Utils. & Transp. Comm'n*, 125 Wn.2d 805, 812, 888 P.2d 728 (1995). We overturn an agency's factual findings only if it is clearly erroneous and we are " 'definitely and firmly convinced that a mistake has been made.' " *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004) (quoting *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994)). "Factual determinations are sufficient only if supported by evidence that is substantial when viewed in light of the whole record before the court." *Bond*, 111 Wn. App. at 572.

Unchallenged findings of fact are verities on appeal. *Darkenwald v. Emp. Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). Additionally, we do not reweigh evidence or reexamine credibility determinations during review of administrative decisions. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001).

Here, LeMay challenges two findings of fact:

4.48 At no point after the investigation began, does it appear that [C.A.] and [K.A.] had enough time, or any time, to coordinate, or even discuss, their versions of the events in question. Despite this, once removed from the school environment, and

13

from their parents' care, [K.A.]'s story changed to match [C.A.]'s in striking similarity, with the added details of what actually occurred once [K.A.]'s mother entered his room.

4.50 Therefore, like the ALJ, the undersigned Review Judge finds that [K.A.]'s statements to Ms. Chavez at the CPS office and during the forensic interview are the most credible statements in this matter, because they most closely match and complement [C.A.]'s statements to Ms. Taylor and later to Ms. Chavez.

CP at 23.

LeMay argues that finding of fact 4.48 is unsupported by substantial evidence because Taylor saw the boys speaking with each other before Chavez took them to the CPS office and there is no evidence in the record that the boys did not speak privately before C.A. went to school on March 18. However, LeMay's argument appears to misunderstand the finding. The finding is focused on the timeframe "after the investigation began," as in when Chavez appeared at the school the day following C.A.'s initial disclosure. At the beginning of the investigation, K.A.'s story involved falling from a tree before it later changed. The finding is merely stating that C.A. and K.A. were not together privately from that point in time until when K.A. changed his story to match C.A.'s about how the injuries occurred.

And there is substantial evidence to support the absence of privacy under that timeframe. Taylor saw and heard the boys' conversation because she was present in the room while K.A. and C.A. were talking. And after the boys were in the room with Taylor, they were transported by Chavez to the CPS office. Both Taylor and Chavez recalled conversations that K.A. and C.A. had following the start of the investigation, showing that they could hear the boys' conversations.

Because this unrefuted testimony supports the finding that the boys were never alone together after they first spoke to Chavez at the school, finding of fact 4.48 is supported by substantial evidence.[5]

LeMay next argues that finding of fact 4.50 is not supported by substantial evidence because, if C.A.'s hearsay statements are stricken, there is nothing to support the finding that K.A.'s statements were credible. But as explained above, LeMay fails to meet her burden to show that C.A.'s hearsay statements were improperly admitted due to an error of law. Additionally, this finding of fact is, to a large degree, a credibility determination, comparing the credibility of K.A.'s statements to his live testimony at the hearing. Both because we do not review credibility determinations or reweigh evidence and because C.A.'s hearsay statements were properly admitted, we determine that finding of fact 4.50 is supported by substantial evidence. *See City of Univ. Place*, 144 Wn.2d at 652.

We determine that LeMay fails to meet her burden to show that the Board's findings of fact were not supported by substantial evidence.

B.  CONCLUSION THAT LEMAY ABUSED K.A. WAS NOT BASED ON AN ERROR OF LAW

LeMay argues that the Board's order was based on an error of law when it concluded that she abused K.A. We disagree.

Conclusions of law are reviewed de novo under the error of law standard. *Safeco Ins. Cos.*, 102 Wn.2d at 391.

WAC 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 defines "physical abuse" for DCYF proceedings:

---

[5] This finding of fact is also supported by finding of fact 4.24, which states that C.A. and K.A. did not have time to match their stories between when they were picked up from school and when K.A. disclosed abuse to Chavez. LeMay did not challenge that finding of fact, and it is therefore a verity on appeal. *Darkenwald*, 183 Wn.2d at 244.

Child abuse or neglect means the injury . . . of a child by any person under circumstances which indicate that the child's health, welfare, or safety is harmed, or the negligent treatment or maltreatment of a child by a person responsible for or providing care to the child. An abused child is one who has been subjected to child abuse or neglect as defined in this section.

(1) Physical abuse means the nonaccidental infliction of physical injury or physical mistreatment on a child that harms the child's health, welfare, or safety. It may include, but is not limited to, such actions as:

(a) Throwing, kicking, burning, or cutting a child;

(b) Striking a child with a closed fist;

(c) Shaking a child under age three;

(d) Interfering with a child's breathing;

(e) Threatening a child with a deadly weapon; or

(f) Doing any other act that is likely to cause and that does cause bodily harm greater than transient pain or minor temporary marks or that is injurious to the child's health, welfare or safety.

(2) Physical discipline of a child, including the reasonable use of corporal punishment, is not considered abuse when it is reasonable and moderate and is inflicted by a parent or guardian for the purposes of restraining or correcting the child. The age, size, and condition of the child, and the location of any inflicted injury shall be considered in determining whether the bodily harm is reasonable or moderate. Other factors may include the developmental level of the child and the nature of the child's misconduct. A parent's belief that it is necessary to punish a child does not justify or permit the use of excessive, immoderate or unreasonable force against the child.

LeMay argues that because the Board's determination of abuse is based on C.A. and K.A.'s

improper hearsay statements and unsupported factual findings, the Board erred in concluding that

16

she abused K.A. Like LeMay's other challenges to the Board's order, she also carries the burden to show the Board erred in determining that she abused K.A.[6] RCW 34.05.570(1)(a).

The Board's conclusion of abuse appears in conclusion of law 5.8, which states, "After reviewing all of the evidence provided, the undersigned Review Judge finds that the Appellant physically abused [K.A.] on this occasion, and that her actions do not meet the definition of reasonable use of corporal punishment." CP at 27. This conclusion of law flows from the unchallenged finding of fact 4.22, which describes K.A.'s disclosure to Chavez:

> He stated that he got up early, before his brother, and that his brother usually gets to eat breakfast first. [K.A.] and [C.A.] had to choose a number between 1 and 100, and [C.A.] guessed the closer number. [K.A.] then stomped off to his bedroom and slammed the door. His mother then arrived to his room with a belt in her hand and closed the blinds. [K.A.] went to a corner of his room, and his mother hit him on his head, behind, and feet with the belt loop. [K.A.] said he was curled up on the ground trying to keep from getting hit. He said he wasn't able to walk as well afterward, and he had ringing in his ears.

CP at 17 (footnotes omitted).[7]

This finding of fact is, in turn, supported by the Board's determination that K.A.'s disclosure to Chavez was credible (finding of fact 4.50).[8] Once these underlying findings of fact are upheld, the resulting description of events in the Board's order fits the definition of abuse

---

[6] While LeMay challenges the determination that she abused K.A. under RCW 34.05.570(3)(e) as being unsupported by substantial evidence, this conclusion of law is more appropriately reviewed under the error of law standard of RCW 34.05.570(3)(d). *Safeco Ins. Cos.*, 102 Wn.2d at 391 (conclusions of law are reviewed for an error of law).

[7] LeMay did not challenge this finding of fact, and it is therefore a verity on appeal. *Darkenwald*, 183 Wn.2d at 244.

[8] As discussed above, finding of fact 4.50 is both supported by substantive evidence and a credibility determination we do not disturb.

provided by WAC 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; striking a child with a belt was a nonaccidental infliction of physical injury that harmed K.A.'s safety and welfare. Additionally, striking K.A. with the belt multiple times did not qualify as physical discipline that is proportionate to the behavior that needed correcting, especially when the behaviors were K.A. stomping to his bedroom and slamming his door.

We determine that LeMay has failed to show that the Board erred when it concluded she abused K.A. because the findings of fact show LeMay's actions fit the definition of physical abuse.

## IV. ARBITRARY OR CAPRICIOUS

Finally, LeMay argues that under RCW 34.05.570(3)(i) the Board's order was arbitrary or capricious. LeMay contends it was unreasonable for the Board to rely on K.A.'s statements when he was an unreliable witness. We disagree.

"Arbitrary or capricious agency action is willful and unreasoning action taken without regard to the attending facts or circumstances." *Squaxin Island Tribe v. Dep't of Ecology*, 177 Wn. App. 734, 742, 312 P.3d 766 (2013). LeMay has the burden to show that the Board's decision was arbitrary or capricious. RCW 34.05.570(1)(a).

Here, it is true that the Board acknowledged K.A. was an unreliable witness who told contradicting accounts of events. However, rather than reject all evidence from K.A., the Board evaluated the circumstances of each of K.A.'s disclosures and whether they matched both the physical evidence and disclosures of other witnesses, including C.A. Following this evaluation, the Board determined that K.A's statements to Chavez were the most reliable because they matched C.A.'s relatively consistent disclosures. And, as noted above, finding of fact 4.50 (stating that K.A.'s statements to Chavez were the most credible) is supported by substantial evidence.

18

Therefore, because there was substantive evidence supporting the Board's factual findings, and because we do not reweigh credibility determinations, LeMay has not carried her burden to show the Board acted willfully or without reason. Thus, the Board's order was not arbitrary or capricious.

## CONCLUSION

LeMay does not meet her burden to show that the Board's order was based on an error of law in admitting C.A.'s hearsay statements, the Board's order was not supported by substantial evidence, or the Board committed an error of law in determining that LeMay abused K.A. Additionally, LeMay fails to show that the Board's order was arbitrary or capricious. Because LeMay fails to meet her burden for any grounds for relief under the APA, we affirm the Board's order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

LEE, J.

19